### FAGAN, FINANCIAL REC'R VS. STILLWELL.

All debts due to the Bank of the State of Arkansas may be discharged in the bonds of the State, or in the interest due thereon (evidenced by coupons,) either before or after judgment (7 Eng. 84; Acts of 1842, 1844, 1848, 1854, 1856.)

So, where the Bank obtained a judgment in her own name against the obligor in an ordinary money bond payable to B. and assigned to her in the usual form; *Held,* on mandamus to compel the Bank to receive such coupons in satisfaction, that the judgment debtor had the right to pay in coupons; that as between him and the Bank, the same legal and moral obligation rested upon the Bank to pay the coupons, as upon him to pay the judgment, in specie.

Where a judgment has been obtained by the State Bank in her own name, upon a money bond assigned to her, generally, it is not competent for her to show, in a Court of law, before or after judgment, that notwithstanding the absolute assignment, there was a parol agreement with the assignor, that she was to act merely as agent or trustee to collect the money and appropriate the proceeds to the purchase of bonds, etc., at their depreciated market value, for his benefit.

*Appeal from Pulaski Circuit Court.*

Hon. John J. Clendenin, Circuit Judge.

S. H. Hempstead, for the appellant.

The obligation, being a specie contract in its inception, did not lose that character by transfer to the bank, and *Stillwell* had no right to discharge it in any thing else than specie. 5 *Peters* 659; 3 *Halst.* 172; 6 *How. S. C. R.* 342.

Bonds are receivable for bank debts, but coupons are not. Acts 1848 p. 72. Stillwell having tendered coupons in discharge of the judgment, the financial receiver was not bound to receive them.

Fowler & Stillwell, for appellee.

Mr. Chief Justice English, delivered the opinion of the Court.

On the 5th of January, 1856, Joseph Stillwell filed a petition, in the Pulaski Circuit Court, for mandamus against James F. Fagan, as Financial Receiver of the Bank of the State of Arkanas, alleging in substance as follows:

That on the 7th of June, 1854, the Bank of the State recovered a judgment against petitioner, in the Pulaski Circuit Court, for $400 debt, $159 damages, and for costs. That petitioner desiring to pay the judgment, and have satisfaction thereof entered of record, on the 2d day of August, 1855, tendered to said Fagan, as such Financial Receiver, $623 60, that being the full amount of the judgment, with interest, etc., in coupons of the bonds of the State, issued by the State to raise the capital of said Bank and of the Real Estate Bank, which coupons were then due; and requested said Fagan to receive the same in payment of the judgment, and enter satisfaction of record, etc., the petitioner having paid to the officers, to whom the same was due, all of the said costs, etc. But that Fagan, as such Financial Receiver, refused to accept the coupons, or to enter satisfaction of the judgment; and, unless restrained, would proceed by execution to sell the property of petitioner to satisfy the judgment.

Prayer for mandamus to compel him to receive the coupons in payment of the judgment, and to enter satisfaction thereof, etc.

The petition was verified by affidavit.

To an alternative writ of mandamus, Fagan responded as follows, in substance:

That the judgment mentioned in the petition was recovered by the Bank upon a writing obligatory for $400, executed by Stillwell to D. J. Baldwin, bearing date 11th June, 1850, and due 11th June, 1854, with 10 per cent. interest from date, and which was endorsed by Baldwin to the bank.

[A transcript of the proceedings and judgment, embracing a copy of the bond, with Baldwin's assignment thereon to the Bank, is exhibited.]

Respondent further states that the bond was assigned and transferred to the Bank, on the 13th of June, 1850, by Baldwin, as collateral security, as appeared by the books of the Bank, in lieu of personal security, and as an obligation payable in specie, and not in bonds, or coupons, or paper, or any other currency than specie; and when collected, to be applied, together with other specie obligations assigned at the same time by Baldwin, to the purchase of bonds or coupons, if to be had, at their market value; and such bonds or coupons to be applied towards the discharge of a note for $5,038 87, which Baldwin then owed the Bank; a copy of which is exhibited, etc.

That the transaction between the Bank and Baldwin was made by John M. Ross, then Financial Receiver, and respondent had no knowledge thereof except such as he derived from the books of the Bank, and the information of others; upon which he avers it to be true that the obligation upon which the judgment was obtained was a specie contract, payable in constitutional currency only, and that it did not lose that character by its assignment to the Bank. That it was received by the Bank as a specie obligation, and was so held; and that it would be a neglect of duty on the part of respondent not to insist on its discharge in the kind of currency contemplated by the parties when the contract was made, etc.

Respondent admits that Stillwell tendered him coupons in payment of the judgment, as alleged in the petition, which he refused to receive for the reasons above stated. He submits that Stillwell had no legal right to discharge the debt in coupons—that it was unwarranted by the contract—that the effect of it would be to allow him to discharge the debt at little over one half the amount really due, coupons being purchasable in the market at about fifty cents on the dollar. That it was a specie debt, and respondent knew of no law authorizing him to receive detached coupons in payment thereof, etc.

That Stillwell could not, in any event, require satisfaction of the judgment to be entered of record, by respondent, until he had paid the debt, interest and costs; and exhibited to respondent proper vouchers or receipts for the payment of such costs, which respondent avers he had not done, nor exhibited such receipts, or copies of them, with his petition.

Stillwell demurred to the response, the Court sustained the demurrer, and Fagan declining to respond further, a peremptory mandamus was awarded against him; and he appealed to this Court.

That debts due to the Bank of the State may be discharged in the bonds of the State, or in the interest due thereon (as evidenced by the *coupons*,) either before or after judgment, there can be no doubt. The Bank being exclusively a State institution, debts due to it, are in effect due to the State, and she has provided by law for the discharge of such debts in her bonds, etc. *Woodruff vs. Trapnall*, 7 *Eng*. 811; (10 *Howard. S. C. R.* 190.) *Acts of* 1842, *p*. 81; *Acts of* 1844, *p*. 50; *Acts of* 1848, *p*. 72; *Acts of* 1854, *p*. 168; *Acts of* 1856, *p*. 105.

The law, in its terms, applies to debts due to the Bank without exception. The Bank is obliged by the law to receive her own notes, bonds of the State, or treasury warrants, etc., in payment of debts due to her, and there is no discrimination as to the character of the debts.

Was the debt in question due to the Bank?

It appears from the transcript of the record exhibited with the

response of Fagan, that the obligation executed by Stillwell to Baldwin, was an ordinary bond for the payment of money; that the assignment of Baldwin to the Bank, endorsed upon the bond, was in the usual form of an absolute and unconditional assignment. That the Bank sued upon the bond in her own name, and for her own use. That Stillwell filed a plea alleging that Curran, a creditor of the Bank, had garnisheed him in chancery as a debtor to the Bank, and the suit was undetermined; to which the Court sustained a demurrer interposed by the Bank, on the ground that the debtors of the Bank were not subject to garnishment. That the Bank recovered judgment against Stillwell, in her own name, and as upon a debt due to her, etc. The Bank has therefore made the record show that the debt is due to her.

Her officer now insists that she may, in a Court of law, dispute the record, by showing that there was a parol agreement between her and Baldwin, to the effect that she, notwithstanding the absolute assignment of the bond to her, was to act as his agent or trustee in its collection, and when collected, to appropriate the proceeds thereof to the purchase of bonds or coupons at their depreciated market value for his benefit, etc. Can she do this?

Suppose Stillwell had pleaded the notes of the Bank as a set-off to the action, could the Bank, in a replication to the plea, have set up such agreement with Baldwin? Most assuredly not, because she declared in her own name as the legal holder of the bond, and such replication would have been a departure from her declaration. She would have been estopped by her declaration from saying that the debt was not hers.

If the Bank had issued an execution against Stillwell, the sheriff would have been bound to receive the notes of the Bank, State bonds, or treasury warrants, in payment of the debt,—because upon the face of his process it would have appeared that the debt was due to the Bank, and by law, payable in any of these securities.

That Ross, the Financial Receiver of the Bank, had the right

to receive, of Baldwin, collateral obligations to secure the debt due from him to the Bank, and to collect the same, and appropriate the proceeds thereof in the purchase of securities for Baldwin's benefit, we do not question. But then he should have taken the transfer of such collateral obligations in such manner as to have sued in the name of Baldwin; or in his own name, or in the name of the Bank, as a trustee, so as to have disclosed the character of the trust upon the face of the record.

As between the Bank and Stillwell, there can be no good reason why the debt should not be paid in the interest due upon the bonds of the State. As to any rights that Baldwin may have in the matter, growing out of what is represented to have been his agreement with the officer of the Bank, they cannot be legitimately considered in this proceeding. This is a contest at law between Stillwell and the Bank, to which Baldwin is not a party, nor does it legally appear that he has any interest in the subject matter of the contest. If all three of the parties were before a Court of Chancery, the question whether Stillwill should be compelled to pay the debt in specie, in order to enable the Bank to fulfill her contract with Baldwin, might be legitimately raised and decided.

The objection, in the response of the Bank, that the obligation of Stillwell to Baldwin was for the payment of specie, and that the State bonds, or coupons, in which Stillwell insists upon paying the debt to the Bank, are at a discount in the market, is a very poor one. The bonds were issued by the State, endorsed and put into circulation by the Bank, as specie contracts. The Bank and the State are as legally and morally bound to pay the interest now due upon the bonds in specie, and to pay it promptly, as Stillwell was to pay his bond to Baldwin in specie. In contemplation of law, and in a contest between the Bank and Stillwell, one is as much a specie debt as the other. If the State bonds are at a discount in the market, it is the fault of the State and the Bank. It is a sorry plea for the Bank, but perhaps unfortunately true, that an obligation issued by the State, and endorsed by the Bank, is less current

in the market than the personal obligation of an individual. As between the Bank and Stillwell, the response for the former is a downright attempt at *repudiation*, which is alike discreditable to the Bank and the State.

The objection made in the response in reference to the costs, amounts to nothing. Stillwell avers, in his sworn petition, that he had paid the costs to the officers before he applied to Fagan to receive coupons in discharge of the debt, and enter satisfaction, etc. This allegation is not denied by the response, but it is merely stated that Stillwell did not exhibit to respondent the receipts of the officers, etc.

The allegations in a petition for mandamus, must either be admitted or denied by the response. (*Crise vs. The Auditor*, 17 *Ark.*) If Stillwell had taken issue to the response, instead of demurring, what would have been the question for the Court, or jury, to determine as to the costs? It would have been, not whether Stillwell had paid the costs, but whether he had exhibited to respondent the receipts of the officers.

If respondent had stated that he was not satisfied that the costs had been paid, and placed his refusal to enter satisfaction on the ground that Stillwell failed to furnish him with the proper evidence of the payment of the costs, the response might have been good as to this point, but the response does not state that respondent desired Stillwell to exhibit to him receipts for the payment of the costs, or that he placed his refusal to enter satisfaction on that ground. It manifestly appears, from the tenor of the response, that the refusal to enter satisfaction, when the tender was made, was not on the ground that the costs had not been paid, or that evidence of their payment was not exhibited, but on the ground that the respondent was not bound to accept the coupons in satisfaction of the judgment.

The judgment of the Court below is affirmed.

Absent, Hon. Thomas B. Hanly.